JOHN B. STITELER AND ELIZABETH L. STITELER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stiteler v. Commissioner
Docket No. 15520-90
United States Tax Court
T.C. Memo 1995-279; 1995 Tax Ct. Memo LEXIS 276; 69 T.C.M. (CCH) 2975; June 21, 1995, Filed *276 Decision will be entered under Rule 155. Ps filed joint Federal income tax returns for the taxable years in issue. H invested in numerous tax shelters during those years. R determined that Ps could not claim deductions from those shelters and determined deficiencies in their Federal income taxes. R and Ps settled the amount of their deficiencies, but W claims that she is entitled to innocent spouse relief under section 6013(e), I.R.C.
Held: W is not entitled to innocent spouse relief because she has not proven that it would be inequitable to hold her liable for the deficiencies attributable to the tax understatements. For petitioner John B. Stiteler: Brad S. Ostroff. For petitioner Elizabeth L. Stiteler: David L. Haga, Ronald P. Adams, and Robert P. Solliday. For respondent: Anne W. Durning. LARO
LARO
MEMORANDUM FINDINGS OF FACT AND OPINION LARO, Judge: Respondent determined the following deficiencies in John B. Stiteler and Elizabeth L. Stiteler's Federal income taxes as follows: [1]
Year
Deficiency
1971
$ 2,939
1972
8,998
1973
1,880
1974
16,474
1976
15,542
1978
112,059
1979
93,943
1980
120,595
1981
60,361
1982
146,439
Respondent also determined *277 that the underpayment of Federal income tax for all taxable years in issue was attributable to tax-motivated transactions within the meaning of section 6621(c). [2] Accordingly, respondent determined that the annual rate of interest payable on the entire underpayment for those years was 120 percent of the adjusted rate established under section 6621(b). Following concessions, [3] the sole issue for decision is whether petitioner is entitled to innocent spouse relief under section 6013(e). We hold she is not. *278 FINDINGS OF FACT Certain facts and exhibits were admitted into evidence through stipulation of the parties. These facts and exhibits are incorporated herein by this reference. Trial of this case was held in Phoenix, Arizona, on November 3, 1994. The record also includes testimony and other exhibits that were admitted at trial. Mr. Stiteler resided in Phoenix, Arizona, and petitioner resided in Scottsdale, Arizona, when they petitioned the Court. For the years in issue, petitioners filed 1971 through 1982 Forms 1040, U.S. Individual Income Tax Returns, using the filing status of "Married filing joint return". Petitioners were married June 8, 1956. Petitioner graduated from Mesa Union High School in 1952 and received a bachelor's degree in education from Arizona State University in 1956. Thereafter, petitioner obtained a teacher's certificate and worked for the Scottsdale school district as a teacher from 1956 to 1957. Petitioner then worked as a secretary/receptionist for a law firm from 1957 to 1959. Petitioner did not work outside the home during the remainder of her marriage. At the time of trial, petitioner was working as a teacher's assistant, earning a little over *279 $ 6 per hour. Mr. Stiteler worked for Connecticut General Life Insurance (Connecticut General) for 27 years. Mr. Stiteler retired from Connecticut General in 1985. From 1962 until approximately 1980, Mr. Stiteler served as the manager of Connecticut General for the State of Arizona. Beginning in 1978 and continuing through 1982, Mr. Stiteler also worked for his own company, Stiteler Investments, Inc. At the time of trial, Mr. Stiteler was in the real estate business and the head of J.E.S. Development, a company he had formed in the early 1980's. In 1982, petitioner hired attorneys Daniel Cracchiolo and Guadalupe Iniguez in order to obtain a divorce from Mr. Stiteler. On January 3, 1984, petitioners entered into a separation agreement. In March 1984, petitioners' marriage was dissolved. Ms. Iniguez drafted the separation agreement. Ms. Iniguez' objectives in drafting the separation agreement were to divide the estate so that petitioner received as close to half of the marital assets as possible, and for petitioner to receive almost purely cash. Mr. Stiteler was cooperative and helpful during the divorce and was generally concerned about petitioner. Pursuant to the separation *280 agreement, petitioners agreed that the division of the assets mentioned therein would be equally divided. [4] The separation agreement provided that: (1) Mr. Stiteler would assume, pay, satisfy, indemnify, and hold petitioner harmless and free from loss with respect to any and all debts and liabilities incurred prior to separation (except those specifically provided in the agreement), and (2) Mr. Stiteler would be solely responsible for the support of the minor children until each reached majority age. The separation agreement also provided: Husband shall hold Wife free and harmless and indemnify Wife from any and all liabilities for federal or state income taxes, penalties or interest assessed for 1983 and prior years and he shall be solely responsible for the payment of any and all legal and accounting fees incurred in connection with responding to or defending any dispute with a taxing authority regarding said tax liability and shall be entitled to receive and keep all tax refunds. During her representation of petitioner, Ms. Iniguez was unaware of tax obligations that the above paragraph was specifically designed to protect against. *281 Pursuant to the separation agreement, petitioner received the following major items under the terms of the separation agreement: Spousal maintenance
$ 56,460.78
Condominium in Coronado, CA, net value
15,000.00
Cash
500,000.00
Secured promissory note
730,000.00
Proceeds from sale of home
[1] 289,874.78
Secured note owned by Mr. Stiteler
300,000.00
In approximately 1964, petitioner was diagnosed as bipolar manic depressive, a condition which continued through the time of trial. Symptoms from petitioner's illness persisted for weeks and sometimes for as long as 7 months at a time. Petitioner also had a history of alcohol abuse. At the time of trial, petitioner was taking the medications Lithium and Prolixin, as well as a hormone and a bladder medication. Mr. Stiteler invested in numerous equipment leasing partnerships. These equipment leasing partnerships included the following: (1) Pueblo Partnership (the SMI Partnership), (2) Allegro Partnership, (3) Galway Partnership, (4) Cyrano Partnership, (5) Orchid Partnership, (6) Madison Partnership, and (7) Park Partnership. [5] The *282 parties have stipulated that the equipment leasing partnerships described in Gralnek v. Commissioner, T.C. Memo. 1989-433, which limited the loss deductions taken by certain limited partners to their section 465 at-risk amounts, were substantially the same as the equipment leasing partnerships known as the SMI Partnership. The parties have also stipulated that the equipment leasing partnerships described in Thornock v. Commissioner, 94 T.C. 439 (1990), which also limited the loss deductions taken by limited partners to their section 465 at-risk amount, were substantially the same as the equipment leasing partnerships known as the Klineman Partnerships.[6]
*283 Respondent determined that petitioners were not entitled to deduct losses attributable to these equipment leasing partnerships. After petitioners filed their petition in this Court, petitioners and respondent reached an agreement as to the amount of the tax understatements. All the tax understatements to which petitioners agreed are attributable to adjustments relating to equipment leasing partnerships. The proceeds of the substantial tax understatements were spent on real estate investments. The real estate investments purchased with the proceeds of the substantial tax understatements were received by Mr. Stiteler upon the dissolution of petitioners' marriage. Petitioner never asked Mr. Stiteler about the tax returns she signed. Petitioner also did not review the tax returns prior to signing them, and never requested to meet with the certified public accountants who prepared the returns. Finally, petitioner never looked at the tax returns other than the signature page. Mr. Stiteler did not discuss any of the investments in equipment leasing partnerships with petitioner because he believed she would not have understood those investments. Mr. Stiteler also believed that petitioner *284 was not interested in discussing those investments. Although Mr. Stiteler had no specific recollection of the circumstances under which any of the returns for the years 1978 through 1982 were signed, he never refused to allow petitioner to look at the returns, never forced petitioner to sign the returns, never abused petitioner physically or emotionally, and never hid assets or information from petitioner. Petitioner's son, Doug Stiteler, testified that he believed petitioner's standard of living had dropped significantly. He cited the fact that petitioner now lives alone in a condominium with "only" 1,800 square feet, instead of sharing a home of 5,000 or 6,000 square feet with five other family members. Ms. Iniguez testified that petitioner's present standard of living was lower than it was before her divorce because she no longer goes on ski trips or has a summer home. OPINION Spouses are generally jointly and severally liable for tax due on a joint Federal income tax return. Sec. 6013(d)(3); Hayman v. Commissioner, 992 F.2d 1256, 1259 (2d Cir. 1993), affg. T.C. Memo. 1992-228; Osborn v. Commissioner, T.C. Memo. 1993-312. *285 Prior to 1971, both spouses were strictly liable for tax deficiencies resulting from an erroneous omission or deduction solely attributable to one spouse, although the other spouse was "innocent". Guth v. Commissioner, 897 F.2d 441, 442-443 (9th Cir. 1990), affg. T.C. Memo. 1987-522. In 1971, Congress remedied this inequity by enacting an "innocent spouse" provision to protect one spouse from the overreaching or dishonesty of the other. Osborn v. Commissioner, supra.
The "innocent spouse" provision of section 6013(e) relieves a spouse of joint Federal income tax liability if each of the following four elements is met: (1) A joint Federal income tax return was filed by the spouses; (2) there is a substantial tax understatement attributable to grossly erroneous items of the other spouse; (3) in signing the return, the claimed "innocent spouse" did not know, and had no reason to know, of the substantial tax understatement; and (4) taking into account all the facts and circumstances, it would be inequitable to hold the claimed "innocent spouse" liable for the deficiency attributable to the *286 tax understatements. Sec. 6013(e)(1). Petitioner bears the burden of proving that each of these elements is satisfied. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Shea v. Commissioner, 780 F.2d 561, 565 (6th Cir. 1986), affg. in part, revg. in part and remanding T.C. Memo. 1984-310; Bokum v. Commissioner, 94 T.C. 126, 138 (1990), affd. 992 F.2d 1132 (11th Cir. 1993). Petitioner's failure to satisfy any one of these elements precludes "innocent spouse" relief. The parties have stipulated that petitioner and Mr. Stiteler filed joint returns on which there were substantial tax understatements within the meaning of section 6013(e)(1)(A) and (B) and that petitioner meets the percentage requirements applicable under section 6013(e)(4). The requirements that remain for petitioner to establish are: (1) The substantial tax understatements are attributable to grossly erroneous items of Mr. Stiteler; (2) in signing the joint returns, petitioner did not know, and had no reason to know, of the substantial tax understatements; and *287 (3) taking into account all the facts and circumstances, it is inequitable to hold petitioner liable for the deficiency attributable to the tax understatements. We find that petitioner has failed to show that it would be inequitable to hold her jointly and severally liable for the disputed taxes. Because petitioner has not satisfied her burden with respect to this essential element, she does not qualify as an innocent spouse within the meaning of section 6013(e). We express no opinion, therefore, as to whether: (1) Petitioner knew or had reason to know of the substantial tax understatements, or (2) the substantial tax understatements are attributable to grossly erroneous items of Mr. Stiteler. The taxpayer asserting innocent spouse status must prove that, taking into account all facts and circumstances, it is inequitable to hold her or him liable for the deficiency. Sec. 6013(e)(1)(D). In assessing the equity in holding a spouse liable, we consider: (i) Whether the spouse claiming relief significantly benefited from the grossly erroneous items attributable to the culpable spouse, Estate of Krock v. Commissioner, 93 T.C. 672, 677 (1989); (ii) whether *288 the spouse claiming relief has been deserted by or divorced or separated from the culpable spouse, id. at 678; sec. 1.6013-5(b), Income Tax Regs.; and (iii) probable future hardships that would be visited upon the purportedly innocent spouse if she were not relieved from liability, Sanders v. United States, 509 F.2d 162, 171 n.16 (5th Cir. 1975). In determining whether a purported innocent spouse significantly benefited from the grossly erroneous items attributable to the culpable spouse, we look to whether the purported innocent spouse significantly benefited beyond normal support, either directly or indirectly, from the erroneous deduction. See Pietromonaco v. Commissioner, 3 F.3d 1342, 1347 (9th Cir. 1993), revg. T.C. Memo. 1991-361; Belk v. Commissioner, 93 T.C. 434, 440 (1989); Purcell v. Commissioner, 86 T.C. 228, 242 (1986), affd. 826 F.2d 470 (6th Cir. 1987); H. Rept. 98-432 (part 2), at 1501-1502 (1984); sec. 1.6013-5(b), Income Tax Regs. Normal support is not a significant *289 benefit for purposes of deciding whether it is inequitable to hold petitioner liable for the deficiency. Pietromonaco v. Commissioner, supra; Terzian v. Commissioner, 72 T.C. 1164, 1172 (1979); sec. 1.6013-5(b), Income Tax Regs. Normal support is determined by the circumstances of the taxpayer. Estate of Krock v. Commissioner, supra at 678; Flynn v. Commissioner, 93 T.C. 355, 367 (1989). Petitioner argues that she should be granted innocent spouse relief because she did not significantly benefit from the tax understatements. Petitioner points to the separation agreement to conclude that she did not receive a significant benefit. Petitioner's argument is premised on the fact that she did not receive any interest in the real estate partnerships in which Mr. Stiteler invested the tax understatements. Petitioner argues, the primary assets received by her pursuant to the separation agreement were either acquired prior to the tax years at issue or were proceeds from the sale of assets acquired prior to such tax years. Finally, petitioner argues, the *290 division of the marital assets provided her with nothing more than the normal standard of living to which she was accustomed during the period 1978 through 1982. Evidence of direct or indirect benefit may consist of transfers of property, including transfers received several years after the year in which the erroneous deductions were claimed. See sec. 1.6013-5(b), Income Tax Regs. Applied to the instant case, petitioner received an indirect benefit due to the transfer of property made pursuant to the separation agreement. While petitioner did not directly receive the real property interest which was purchased from the tax understatements, petitioner nonetheless received a significant amount of other property in lieu of her share of the real property interest.[7] Further, the property received by petitioner pursuant to the separation agreement was far in excess of petitioner's normal support. The fact that petitioner's settlement cannot be directly traced to the real property interest purchased with the tax understatements is inconsequential. Cf. Foley v. Commissioner, T.C. Memo. 1995-16 (it would be inequitable to hold taxpayer liable where taxpayer *291 received marital home and husband's promise to pay tax deficiencies where such promise was speculative and unreliable). Because petitioner received far more than she otherwise would have received in her settlement agreement on account of the tax understatements, we find that she significantly benefited from the tax understatements. The fact that the person seeking relief has been deserted by her spouse, or the fact that she has been divorced or separated from such spouse may also be taken into account in granting innocent spouse relief. Sec. 1.6013-5(b), Income Tax Regs. While petitioner obtained a divorce from Mr. Stiteler, petitioner received his promise to pay any resulting tax deficiencies. This *292 Court has considered the issue of whether this promise to pay constitutes a basis upon which innocent spouse relief can be denied. See, e.g., Foley v. Commissioner, supra; Buchine v. Commissioner, T.C. Memo. 1992-36, affd. 20 F.3d 173 (5th Cir. 1994); Henninger v. Commissioner, T.C. Memo. 1991-574; Knapp v. Commissioner, T.C. Memo. 1988-109. How this promise to pay the resulting tax deficiencies influences the inequity of holding petitioner liable turns on whether this promise is reliable or speculative. In Foley v. Commissioner, supra, this Court held that such a promise could not be the basis for denying a taxpayer innocent spouse relief where the culpable spouse has been unreliable in the past, and where such a promise is merely speculative. In Henninger v. Commissioner, supra, however, this Court relied on a promise to pay the tax deficiency in denying the taxpayer innocent spouse relief. See also Knapp v. Commissioner, supra *293 (holding that it would not be inequitable where the spouse actually received an amount for the payment of taxes even though the culpable spouse did not meet his other support obligations under a divorce decree); Buchine v. Commissioner, supra (in denying innocent the spouse relief, this Court noted that the taxpayer had the right to indemnification from the former spouse). Applied to the facts herein, petitioner has not demonstrated that Mr. Stiteler would not or could not honor his obligation to pay the underlying tax deficiencies for the years in issue. [8] To the contrary, Mr. Stiteler dealt fairly with petitioner throughout the divorce, and testified on behalf of petitioner in this proceeding. We, therefore, conclude that Mr. Stiteler's promise to pay the tax deficiencies herein is a factor that suggests that it would not be inequitable to hold petitioner liable for the tax understatements. *294 Finally, petitioner contends that denying her innocent spouse relief would be a severe future hardship. Petitioner points to the fact that she is earning only approximately $ 150 per 2-week pay period. Further, petitioner alleges that the proceeds received in the divorce decree have either been utilized in treating her illness or will be needed for future medical care. Respondent alleges that petitioner is trying to mislead the Court in that petitioner is a very wealthy woman who invested most of the proceeds she received in the divorce decree. Petitioner bears the burden of proving that she would suffer future hardship if she is denied innocent spouse relief. Rule 142(a). Petitioner did not persuade us that she would suffer such hardship. Petitioner received a substantial amount of money upon dissolution of her marriage. There is no credible evidence that petitioner no longer has these funds. The fact that petitioner lives in a smaller home and no longer lives the lavish lifestyle she may have lived during her marriage does not, in and of itself, show that she would suffer future hardship if she is denied innocent spouse relief. Petitioner's choice of lifestyle should *295 not affect her entitlement to innocent spouse relief. While we sympathize with petitioner's medical and alcohol problems, these problems are not relevant to our consideration of whether it is inequitable for petitioner to be liable for the deficiencies attributable to the tax understatements. See, e.g., Lauer v. Commissioner, T.C. Memo. 1994-579. Accordingly, we sustain respondent's determination. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Hereinafter, we will refer to John B. Stiteler and Elizabeth L. Stiteler as petitioners, John B. Stiteler individually as Mr. Stiteler, and Elizabeth L. Stiteler as petitioner.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. The parties agree that the subject deficiencies are $ 69,914, $ 86,691, $ 67,323, $ 41,137, and $ 70,833 for the 1978, 1979, 1980, 1981, and 1982 taxable years, respectively. The parties further agree that these understatements were substantial underpayments attributable to tax-motivated transactions.↩
4. The agreement mentioned the community property, the joint property, and the other marital assets of the parties.↩
1. Petitioner was responsible for any taxes resulting from the sale of this property.↩
5. The partnerships described in (2) through (7) of this sentence are hereinafter collectively referred to as the Klineman Partnerships.↩
6. Respondent conceded the adjustments attributable to the Ryland and Rolfe Partnerships, earlier Klineman partnerships, as they were not subject to the limitations of sec. 465. The parties agreed to resolve the Klineman Partnerships (other than the Ryland and Rolfe Partnerships) by allowing petitioners an ordinary deduction equal to their investment in each partnership, but only to the extent of the loss claimed in each year.↩
7. Unlike the taxpayer in Terzian v. Commissioner, 72 T.C. 1164↩ (1979), petitioner received more than a one-time payment in lieu of alimony. Petitioner received a significant amount of cash and notes in addition to the proceeds from the sale of the family residence and spousal support.
8. Petitioner contends in her brief that there is some question as to whether Mr. Stiteler has the present means to pay the tax deficiencies. Petitioner did not, however, present any evidence to support this contention. To the contrary, petitioner's attorney objected vehemently when Mr. Stiteler was asked questions on cross-examination by respondent regarding his ability to pay.↩