T.C. Memo. 1996-400

UNITED STATES TAX COURT

ROSEMARIE MEYER, Petitioner <u>v</u>. COMMISSIONER OF
INTERNAL REVENUE, Respondent

Docket No. 16676-94.                    Filed August 27, 1996.

On the facts, <u>Held</u>:  P is not entitled to innocent
spouse protection within the meaning of sec. 6013(e),
I.R.C., as to the deficiency, additions, and penalties
in income tax determined by the Commissioner for 1989.

<u>James B. Lewis</u>,[1] <u>Hedy Pollack Forspan</u>, and Jodi L. Bayrd
(specially recognized), for petitioner.

<u>William J. Gregg</u> and <u>Thomas J. Kerrigan</u>, for respondent.

---

[1]James B. Lewis died shortly after the trial and briefing of
this case.

MEMORANDUM FINDINGS OF FACT AND OPINION

NIMS, Judge:   Respondent determined a deficiency in petitioner's Federal income tax for 1989 of $59,718.  Respondent also determined the following:  (1) an addition to tax of $3,076 under section 6651(a)(1); (2) an accuracy-related penalty of $11,944 under section 6662 due to a substantial understatement of income tax, and (3) an addition to tax of $4,182 under section 6654(a) as a result of the failure of petitioner to pay estimated income tax.

After concessions, the sole remaining issue for decision is whether Rosemarie Meyer (petitioner or Mrs. Meyer) may claim innocent spouse status under section 6013(e) for 1989.  For the reasons that follow, we hold that petitioner does not qualify for such relief.

All section references, unless otherwise specified, are to sections of the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The parties have stipulated to some of the facts and the Court has so found.  This reference incorporates the stipulation of facts and attached exhibits.  Mrs. Meyer resided in Lindenhurst, New York, when she filed her petition.

FINDINGS OF FACT

Petitioner wed Robert J. Meyer in 1967 and remained married to him at the time of trial, although the couple separated in

1991. In 1993, Mr. Meyer was convicted of insurance fraud and subsequently incarcerated. The conduct leading to his conviction took place after the year at issue and does not concern the matters in the instant case. Throughout 1989 petitioner resided at Lindenhurst, New York (Lindenhurst) and, alternately, Muttontown, New York (Muttontown).

Mrs. Meyer, a housewife and mother of six children, received a high school diploma. She met her future husband at age 15-1/2 and married him at age 19. In 1984 petitioner and her family moved from their 3,500 square foot ranch house in the modest community of Lindenhurst to a 35,000-square-foot, 42-room Georgian-style mansion situated on 14.583 acres of improved land in the exclusive area of Muttontown. Grand-Perridine Development Corp. (Grand-Perridine), an entity wholly owned by petitioner's husband, acquired the estate in a highly leveraged transaction for the purpose of subdividing the property and building homes to sell to the public. While Mr. Meyer lived at Muttontown continuously from 1984 through 1989, petitioner and her children moved back and forth several times between Lindenhurst and Muttontown due to Mr. Meyer's abusive behavior stemming from his alcoholism. Throughout 1989 the Meyer children attended schools in the Oyster Bay-East Norwich Central School District, the school district for the Muttontown residence, to achieve a semblance of stability.

The Muttontown estate housed masterpiece original works of art by Titian, Modigliani, Donatello and Velasquez, among others, worth in excess of fifty million dollars, and benefitted from a showcase of interior designers on the premises shortly after the mansion's purchase. The Meyer family owned antiques and furniture valued at almost $3 million dollars, as well as over $150,000 worth of jewelry.

From the mid 1980s to the early 1990s Mr. Meyer employed several chauffeurs who drove him, his clients, the Meyer children, and to a lesser extent, petitioner, in a Lincoln stretch limousine. Petitioner retained a live-in housekeeper/nanny to assist in the upkeep of the sprawling mansion and to aid her with the younger children while at Muttontown. During this time Mrs. Meyer accompanied her husband on several trips, including to "one of the islands" and to Malta. While Mr. Meyer traveled to Malta ostensibly for business purposes, petitioner went purely for recreation. During this period Mr. Meyer maintained a life insurance policy and also established a trust, both of which named his wife as the beneficiary.

Although petitioner testified she did not work outside of the home, she received taxable wages from East Coast Investors, Ltd. (East Coast), another of her husband's corporations, during the taxable year 1985. Mrs. Meyer also involved herself as a director and/or officer of at least 2 of her husband's

corporations, all of which were located in a single office attached to the Muttontown residence. Although petitioner owned no stock in any of Mr. Meyer's business enterprises, she held the titles of vice president of East Coast and secretary of Grand-Perridine. She also served as a director of the latter corporation. In Mrs. Meyer's capacity as secretary of Grand-Perridine she attended the closing of the Muttontown property on December 30, 1983, and also acknowledged her liability as a guarantor of the mortgage on that property as Mr. Meyer's wife. Mrs. Meyer negotiated and issued checks on behalf of East Coast in payment of monthly fees on a condominium located in Huntington, New York, that the corporation had acquired.

Petitioner also managed the day-to-day finances of the Meyer household through funds her husband supplied her in the form of checks drawn on corporate accounts, as her husband lacked a personal checking account. Mrs. Meyer maintained several certificates of deposit, plus savings and checking accounts, in her own name at various banks during the late 1980s and early 1990s. Petitioner also negotiated checks drawn on several of her husband's corporations, including East Coast, Grand-Perridine, Union Street Consultants, Inc., and American Express Development Corp. (known alternately as American Express National Development Corp.) (AED). Such checks paid for, among other things, car insurance on at least one of the five automobiles registered in her name between August 1989 and January 1992, housekeeping

services at Muttontown, local pharmacy bills, pediatric medical bills, medical insurance for family members, credit card bills, housepainting, food, and other personal expenses.  On March 16, 1985 petitioner established an irrevocable trust for her son, Micha Meyer.  Furthermore, on that date her husband named her as trustee of a trust established for their daughter, Bethany Meyer.

In January 1989 petitioner cashed a total of $14,000 in checks issued to her by AED.  Mrs. Meyer deposited $33,888.78 into her Norstar Bank checking account throughout 1989.  Petitioner also deposited $1,500 monthly rental payments received from a tenant residing in a cottage located on the Muttontown property into a separate personal Norstar Bank account during 1989.

On May 14, 1990, petitioner and her husband executed and filed a Form 1040 joint tax return prepared by Mr. Meyer's accountant for the calendar year 1989.  The return reported the following amounts for adjusted gross income, Schedule A deductions, Schedule C gross receipts, taxable income and tax due:

```
Adjusted Gross Income..............$16,247.00
Schedule A deductions................6,181.00
Schedule C gross receipts...........36,000.00
Taxable Income.....................(3,934.00)
Tax Due....................................0
```

The return included a clearly visible deduction of $19,753 on line 29 of the Schedule C attached to the Form 1040.  Petitioner

did not read or review the return, nor did she ask any questions pertaining to it prior to affixing her signature. She claimed no knowledge of financial affairs and tax matters. Mrs. Meyer acknowledged that if she had questioned her husband regarding the return he would have answered her truthfully.

On June 23, 1994 respondent timely mailed a statutory notice of deficiency to petitioner and her husband in which a deficiency was determined for 1989 in the amount of $59,718 in income tax and additions to tax of $3,076 and $4,182 pursuant to sections 6651(a)(1) and 6654(a), respectively, and a penalty of $11,944 pursuant to section 6662. Respondent derived the income tax deficiency from: (1) The omission from income of a $180,748 constructive dividend from AED; (2) disallowed Schedule C expenses in the amount of $19,753; (3) a reduction of $20 to Schedule C income reported; and (4) an increase of $161 for omitted interest income from petitioner's personal accounts at Norstar and Dollar Dry Dock banks. Petitioner conceded the correctness of the amounts of all items in the deficiency, asserting only that she qualified for innocent spouse relief. Petitioner does not argue or attempt to prove that the omitted income adjustment of $161 or the adjustment in favor of the petitioner of $20 for overstated Schedule C gross receipts set forth in the statutory notice of deficiency qualifies for innocent spouse relief. Accordingly, petitioner has not met her burden of proof with respect to these adjustments. Rule 142(a).

OPINION

Married couples who file joint returns ordinarily incur joint and several liability for the full amount of tax due on their combined incomes. Sec. 6013(d)(3); Hayman v. Commissioner, 992 F.2d 1256, 1258 (2d Cir. 1993), affg. T.C. Memo. 1992-228; Sonnenborn v. Commissioner, 57 T.C. 373, 381 (1971). The "innocent spouse" defense provided in section 6013(e) partially alleviates the harshness of this rule. Section 6013(e) provides:

> (e) Spouse Relieved of Liability in Certain Cases.--
>
> (1) In General.--Under regulations prescribed by the Secretary, if--
>
> (A) a joint return has been made under this section for a taxable year,
>
> (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse,
>
> (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and
>
> (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement,
>
> then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement.

Whether an individual qualifies for innocent spouse status in order to avoid liability primarily involves a factual inquiry.

Petitioner must meet all of the requirements of the innocent spouse provision to qualify for relief, as Congress framed the statute in the conjunctive. Rule 142(a); Hayman v. Commissioner, supra at 1260. Furthermore, petitioner must prove all of the elements of the innocent spouse test by a preponderance of the evidence. Rule 142(a); Friedman v. Commissioner, 53 F.3d 523, 528 (2d Cir. 1995), affg. in part, revg. in part and remanding T.C. Memo. 1993-549. Respondent concedes that petitioner satisfies the section 6013(e)(1)(A), section 6013(e)(3), and section 6013(e)(4) elements of the innocent spouse requirements for the relevant year. (Section 6013(e)(3) states the numerical prerequisite to determine if a substantial understatement exists. Section 6013(e)(4) concerns whether such understatements exceed a specified percentage of the putative innocent spouse's income.)

Three elements of the innocent spouse requirement remain in dispute: (1) Whether the understatement was attributable to grossly erroneous items of petitioner's husband alone; (2) whether petitioner possessed the knowledge referred to in subparagraph (C); and (3) whether under the facts of this case there exists the type of inequity referred to in subparagraph (D). In reaching our conclusion as to Mrs. Meyer's liability, guidelines provided by recent decisions of the U.S. Court of Appeals for the Second Circuit (to which an appeal of this case

ordinarily would lie) substantially aid the Court.  Friedman v.
Commissioner, supra; Hayman v. Commissioner, supra.

Issue 1.  Whether the Understatement Was Attributable to Grossly
Erroneous Items of Petitioner's Husband Alone

Mrs. Meyer has failed to prove by a preponderance of the
evidence that a substantial understatement of tax exists that is
attributable to grossly erroneous items of her husband alone for
any of the items respondent raised in the notice of deficiency.
The items remaining for discussion concern the omission from
income of the $180,748 constructive dividend, as well as the
disallowed $19,753 Schedule C expense.

The term "grossly erroneous items" is defined by section
6013(e)(2) as "(A) any item of gross income attributable to such
[culpable] spouse which is omitted from gross income, and (B) any
claim of a deduction, credit, or basis by such spouse in an
amount for which there is no basis in fact or law."  Whether a
claim is grossly erroneous must be evaluated as of the time of
filing of the tax return.  Friedman v. Commissioner, supra at
529.

A.  The Constructive Dividend

Omitted income items are automatically grossly erroneous if
solely attributable to the culpable spouse.  Sec. 6013(e)(2)(A).
Although petitioner's husband organized and owned AED entirely,
Mrs. Meyer had access to, and use of, the funds held in this
entity's name.  In fact, respondent's determination of the

$180,748 constructive dividend derives from Mrs. Meyer's use of AED's funds for personal purposes.

The elements of control over corporate funds and whether a spouse has benefitted from the constructive dividend, rather than actual stock ownership, comprise the sine qua nons of the attribution of a constructive dividend to one or both spouses. Compare Bokum v. Commissioner, 94 T.C. 126, 140 (1990) (omitted income items pertain to sole shareholder husband, not relief-seeking spouse, where the latter became an officer and director of the corporation only after the transaction at issue, was merely a figurehead and did not take part in any corporate affairs), affd. 992 F.2d 1132 (11th Cir. 1993), Carter v. Commissioner, T.C. Memo. 1977-322 (granting relief where petitioner held basically symbolic position as officer of corporation completely controlled by her husband, although she owned a small percentage of stock, and she did not benefit from the constructive dividend) and Hagaman v. Commissioner, T.C. Memo. 1990-655 (nonshareholding spouse did not benefit from constructive dividend, did not exercise control over her husband's corporation, and unreported income was not made available for her use) affd. in part and remanded in part 958 F.2d 684 (6th Cir. 1992), with Green v. United States, 460 F.2d 412, 420-421 (5th Cir. 1972) (taxpayer who owned merely 7.9 percent of corporation's stock exercised sufficient control for constructive dividend to be attributed to her).

Although Mrs. Meyer owned no stock of AED, she exercised significant control over the funds of her husband's corporation and benefitted from corporate payment of personal expenses. Thus the omitted income inured to petitioner's benefit both directly and indirectly, and relief does not attach to the extent of such benefit. Kistner v. Commissioner, T.C. Memo. 1991-463, revd. on other grounds 18 F.3d 1521 (11th Cir. 1994), and remanded T.C. Memo. 1995-66.

B. The Disallowed Expenses

Unlike omitted income items, disallowed deductions are not automatically grossly erroneous if attributable to the putative culpable spouse alone. Rather, in order for petitioner to prove the disallowed Schedule C expenses "grossly erroneous", she must establish the claimed deduction has "no basis in fact or law". Sec. 6013(e)(2)(B). Petitioner can only meet this requirement if the claimed expenses lacked deductibility under well-established legal principles or if no substantial legal argument exists to support the deductibility of the expense. Russo v. Commissioner, 98 T.C. 28, 32-33 (1992); Douglas v. Commissioner, 86 T.C. 758, 762-763 (1986).

Ordinarily, a deduction has no basis in fact or law if it is "fraudulent", "frivolous", "phony", or "groundless". Bokum v. Commissioner, supra at 1142; Russo v. Commissioner, 98 T.C. at 32; Douglas v. Commissioner, 86 T.C. at 763. The Court will not consider a deduction groundless merely because petitioner failed

to substantiate it.  See Kaye v. Commissioner, T.C. Memo. 1995-345.  Nor can petitioner rely solely on respondent's later disallowance of the deduction in the statutory notice of deficiency to prove the deduction lacks a basis in law or fact. Flynn v. Commissioner, 93 T.C. 355, 364 (1989); Douglas v. Commissioner, 86 T.C. at 763; Kaye v. Commissioner, supra. Moreover, the fact that petitioner conceded the correctness of respondent's disallowance fails to establish that the claimed deduction has no basis in law or fact.  Purcell v. Commissioner, 86 T.C. 228, 239 (1986), affd. 826 F.2d 470 (6th Cir. 1987).

We cannot find that the disallowed Schedule C expenses as fraudulent, frivolous, phony, or groundless.  See Bokum v. Commissioner, 992 F.2d at 1142.  Petitioner's witness Robert J. Meyer testified the disallowed Schedule C business expenses comprised part of the development project for the Muttontown property.  Although Mr. Meyer could not precisely recall the details surrounding the claimed expenses, nothing in his testimony alerts the Court to the possibility that these expenses were fraudulent, frivolous, phony or groundless, or that Mr. Meyer never initiated the development project on which the expenses were premised.  Petitioner herself acknowledged the existence of her husband's land development project.  The deduction is not grossly erroneous because of the ultimate failure of the subdivision scheme at the Muttontown property. Nor is the deduction grossly erroneous merely because Mr. Meyer

could not substantiate the expenses in court 6 years later.  See Kaye v. Commissioner, supra; Feldman v. Commissioner, T.C. Memo. 1993-17, affd. 20 F.3d 1128 (11th Cir. 1994).

Thus, for the omitted income and deduction items we hold that petitioner has failed to demonstrate a substantial understatement of tax attributable to grossly erroneous items of her spouse alone.  The constructive dividend was attributable to both petitioner and her husband, and the disallowed deductions were not shown to have no basis in fact or law.

Issue 2.  Whether Petitioner Knew, or Had Reason to Know, that There Was a Substantial Understatement of Tax

Petitioner knew, or had reason to know, of the substantial understatement of tax when she signed the 1989 tax return.  Sec. 6013(e)(1)(C).  The U.S. Court of Appeals for the Second Circuit, to which this case is appealable, has adopted the test for knowledge espoused in Price v. Commissioner, 887 F.2d 959 (9th Cir. 1989).  Hayman v. Commissioner, 992 F.2d at 1261.  We follow the Court of Appeals for the Second Circuit's position in the ensuing discussion under the Golsen rule.  Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

Price articulates two slightly different burdens for a taxpayer to overcome in determining whether a putative innocent spouse knew, or had reason to know, of the substantial understatement, depending on whether the issue concerns a

disallowed deduction or an item of omitted income. Price v. Commissioner, 887 F.2d at 963. For disallowed deductions, the taxpayer must establish that "she [or he] did not know and did not have reason to know that the deduction would give rise to a substantial understatement." Id.

In cases involving the omission of income, a slightly higher hurdle for the taxpayer exists: the relief-seeking spouse must show that she did not know, and should not have known, of an income-producing transaction that her spouse failed to report on their joint return, thus giving rise to the substantial understatement. Hayman v. Commissioner, 992 F.2d at 1261; see Langberg v. Commissioner, T.C. Memo. 1994-223. The Court of Appeals for the Second Circuit in Friedman succinctly stated the rationale for the differing standards: "[A]pplying the omission of income test to cases involving the disallowance of deductions would eviscerate the innocent spouse defense, since merely looking at the tax return informs the spouse of the transaction * * * that gave rise to the deduction." Friedman v. Commissioner, 53 F.3d at 530.

With respect to a taxpayer's "reason to know", courts tend to use a test possessing both subjective and objective components: whether a "'reasonably prudent taxpayer in * * * [taxpayer's] position at the time she signed the return could be expected to know that the return contained the substantial understatement.'" Hayman v. Commissioner, 992 F.2d at 1261

(quoting Price v. Commissioner, supra at 965); Stevens v. Commissioner, 872 F.2d 1499, 1505 n.8 (11th Cir. 1989), affg. T.C. Memo. 1988-63. This test applies to both omissions from income and erroneous deductions. Stevens v. Commissioner, supra at 1505 n.8. Four factors considered relevant to the "reason to know" test are: (1) The relief-seeking spouse's level of education; (2) the relief-seeking spouse's level of participation in family and business affairs; (3) the presence of expenditures that appear lavish or unusual when compared with the family's past levels of income, standard of living, and spending patterns; and (4) the culpable spouse's evasiveness and deceit concerning the couple's finances. Friedman v. Commissioner, 53 F.3d at 531-532 (citing Hayman v. Commissioner, 992 F.2d at 1261); Price v. Commissioner, supra at 965. No single factor or set of factors is dispositive. This Court does not make a determination merely by adding factors favoring petitioner's position; rather, the test is a subjective one. Guth v. Commissioner, 897 F.2d 441, 444 (9th Cir. 1990), affg. T.C. Memo. 1987-522; see Langberg v. Commissioner, supra.

In both omitted income and erroneous deduction cases, spouses who fail to read the returns before signing them are nonetheless charged with constructive knowledge of their contents. Hayman v. Commissioner, 992 F.2d at 1262. The Court will not excuse a petitioner who neglects to review a return that she signed under penalties of perjury. Terzian v. Commissioner,

72 T.C. 1164, 1170 (1979). Congress never intended the innocent spouse exemption to protect a spouse who turns a blind eye to facts within her reach as to whether a substantial understatement exists on a joint return, if such facts would have put a reasonably prudent taxpayer on notice to inquire. Bokum v. Commissioner, 94 T.C. at 148; Clevenger v. Commissioner, T.C. Memo. 1986-149, affd. 826 F.2d 1379 (4th Cir. 1987). In such instances, the Court imputes the requisite knowledge to the putative innocent spouse unless she satisfies her duty of inquiry. Hayman v. Commissioner, 992 F.2d at 1262; Adams v. Commissioner, 60 T.C. 300, 303 (1973); McCoy v. Commissioner, 57 T.C. 732, 734 (1972). The relief-seeking spouse is not excused from imputation of constructive knowledge merely because she is a homemaker and relied on the other spouse to handle the family finances. Stevens v. Commissioner, supra at 1507. Moreover, a would-be innocent spouse cannot rely on ignorance of the law as a defense. Hayman v. Commissioner, 992 F.2d at 1262.

We now apply the foregoing principles to the facts before us.

### A.  The Disallowed Deduction

The record indicates that petitioner did not participate in the daily management of Mr. Meyer's business despite her position as an officer and director of several of her husband's companies. Consequently, we conclude that petitioner did not have actual knowledge of the transaction producing the understatement.

Therefore, the Court must ascertain whether she had "reason to know" of the facts giving rise to the substantial understatement. We hold that petitioner had reason to know of the substantial understatement of tax on her joint return as a result of the $19,753 deduction.  As stated in Price v. Commissioner, 887 F.2d at 965:

> Such notice is provided if the spouse knows sufficient facts such that a reasonably prudent taxpayer in her position would be led to question the legitimacy of the deduction.  * * *  In such a scenario, a duty of inquiry arises, which, if not satisfied by the spouse, may result in constructive knowledge of the understatement being imputed to her.  * * *

First, the Court attributes constructive knowledge of the contents of the return at issue to Mrs. Meyer, despite her claim that she signed the return without reading it.  Hayman v. Commissioner, 992 F.2d at 1262; Bokum v. Commissioner, 94 T.C. at 148.

Mrs. Meyer's constructive knowledge of the contents of the return, in conjunction with her affluent surroundings, the amount of money passing through her personal accounts for 1989, and the negative amount of taxable income on her return, placed her on notice that an understatement existed.  Had petitioner even cursorily glanced at the return, she would have seen that her reported adjusted gross income was a mere $16,247 and that the amount of tax due was $0.  See Friedman v. Commissioner, 53 F.3d at 531; Hayman v. Commissioner, 992 F.2d at 1262; Price v. Commissioner, 887 F.2d at 966.  Compare Resser v. Commissioner,

74 F.3d 1528, 1540 (7th Cir. 1996), revg. T.C. Memo. 1994-241 (petitioner wife did not have reason to know there was substantial understatement where, despite the relative size of deductions vis-a-vis income, a consistent adjusted gross income was reported on returns over the years, the returns at issue involved the "complex financial world" of trading losses, and there was no appreciable difference in living standard from prior years). Accordingly, we further hold that Mrs. Meyer had a duty to inquire. Price v. Commissioner, 887 F.2d at 965-966; Park v. Commissioner, T.C. Memo. 1993-252, affd. 25 F.3d 1289 (5th Cir. 1994).

The extent of the putative innocent spouse's duty to inquire may be inversely proportional to the complexity of the items at issue. In Friedman, the disallowed deduction involved the labyrinthine world of tax shelters, and the Court held a mere inquiry of her husband by the relief-seeking spouse entitled her to relief under section 6013(e). Friedman v. Commissioner, 53 F.3d at 531; see Epstein v. Commissioner, T.C. Memo. 1996-239. In the instant case, however, the deduction at issue merely involves business expenses, which Mrs. Meyer failed to show were complex financial transactions. See Resser v. Commissioner, supra at 1538.

Petitioner claims that her inability to understand taxes, her lack of business orientation, and the fact she did not advance beyond high school should preclude the imputation of

knowledge for purposes of the innocent spouse provisions. Petitioner relies too heavily on these factors which, in any event, are derived from her self-serving testimony. The level of education and level of participation in business and family affairs do not themselves confer innocent spouse status; rather, they are relevant to whether, at the time of signing the return, a reasonably prudent taxpayer in the spouse's circumstance could be expected to know that the tax liability as stated was erroneous or that further investigation was warranted. Sanders v. United States, 509 F.2d 162, 166-167 n.5 (5th Cir. 1975).

The fact petitioner possessed only a high school diploma does not automatically disqualify her from having "reason to know" of the substantial understatement. See Langberg v. Commissioner, T.C. Memo. 1994-223. Moreover, contrary to petitioner's argument, the duty of inquiry is not obviated by her lack of familiarity with the Federal tax laws or her reliance on her husband's familiarity with their finances and Federal tax laws. Hayman v. Commissioner, 992 F.2d at 1262; Park v. Commissioner, supra. A reasonably prudent taxpayer in Mrs. Meyer's position would have questioned the legitimacy of the deduction. Petitioner handled payment of all the household expenses and presumably knew the amount of income it took to run the household. See Resser v. Commissioner, supra at 1538; Price v. Commissioner, 887 F.2d at 965; Prince v. Commissioner, T.C. Memo. 1995-368; Langberg v. Commissioner, T.C. Memo. 1994-223.

Furthermore, lavish expenditures existed as compared with the family's earlier levels of income, standard of living, and spending patterns. Petitioner lived an extremely affluent lifestyle, residing in a Gatsbyesque mansion on Long Island's fabled Gold Coast. Such a high standard of living differed greatly from the modest lifestyle of the Meyer family when they resided at the ranch house in Lindenhurst. "To be entitled to the benefits of section 6013(e) a spouse is not required to have perfect knowledge of the family's finances; nor is * * * [he] required to see that the family maintains a balanced budget; however * * * [he] cannot close * * * [his] eyes to unusual or lavish expenditures." Mysse v. Commissioner, 57 T.C. 680, 699 (1972). See also Resser v. Commissioner, supra at 1540. Mrs. Meyer's situation contrasts sharply with that of the petitioner in Price v. Commissioner, 887 F.2d at 965, where there were no unusually lavish expenditures when compared to prior levels of income, standard of living and spending patterns, and the husband took advantage of the petitioner's failure to understand financial matters.

Furthermore, the record fails to show evasiveness or deceit regarding the couple's finances on the part of Mr. Meyer. Unlike Friedman, where the husband concealed his gambling addiction and the enormous amounts of money he had lost, no evidence suggests that Mrs. Meyer's husband intentionally misled her or hid information from her that would support a grant of innocent

spouse relief. Friedman v. Commissioner, 53 F.3d at 532; accord Resser v. Commissioner, supra at 1540; McComb v. Commissioner, T.C. Memo. 1994-577; Langberg v. Commissioner, T.C. Memo. 1994-223. Petitioner knew about her husband's companies and also of the land development transaction on which the deduction was based. She participated at corporate meetings. Moreover, she testified her husband would have been truthful with her if asked about the deductions on the return. In light of the foregoing, petitioner fails to meet her burden of proof to show that she did not know, and did not have reason to know, there was a substantial understatement of tax as a result of the erroneous Schedule C deduction.

### B. Omitted Income Items

Mrs. Meyer knew, or should have known, of the income-producing transaction her spouse failed to report on their joint 1989 return based on: (1) Petitioner's improved family lifestyle and (2) her involvement in the financial affairs of her family as well as her husband's companies. See supra pp. 20-21. Where personal living expenses to sustain petitioner's lavish lifestyle and deposits to her accounts during 1989 greatly exceeded the adjusted gross income of $16,247 reported on the 1989 return, a reasonably prudent taxpayer in Mrs. Meyer's position should have known of the substantial understatement of income. See Estate of Jackson v. Commissioner, 72 T.C. 356, 361 (1979). Petitioner herself deposited checks and paid expenses in amounts exceeding

her reported adjusted gross income for the tax year at issue. See <u>Pietromonaco v. Commissioner</u>, 3 F.3d 1342, 1345 (9th Cir. 1993), revg. T.C. Memo. 1991-361. Based upon the foregoing, Mrs. Meyer should have known of the income-producing transaction the putative culpable spouse failed to report on their joint return, thus giving rise to the substantial understatement.

<u>Issue 3. Whether It Is Inequitable to Hold Petitioner Liable for the Substantial Understatement of Tax</u>

The Court finds it not inequitable to hold Mrs. Meyer liable for the substantial understatement of tax. A taxpayer claiming innocent spouse relief must demonstrate that, given all of the facts and circumstances, it would contravene equitable notions to hold the petitioner liable for the substantial understatement attributable to the putative culpable spouse. Sec. 6013(e)(1)(D).

In determining whether it is inequitable to hold a spouse jointly liable, we have in the past considered the following factors: (1) Whether the petitioner has enjoyed a significant benefit as a result of the substantial understatement of tax, <u>Estate of Krock v. Commissioner</u>, 93 T.C. 672, 678 (1989); (2) whether the petitioner has been deserted by, divorced, or separated from the putative culpable spouse, section 1.6013-5(b), Income Tax Regs.; and (3) all other relevant facts and circumstances. Sec. 6013(e)(1)(D). The statute no longer requires consideration of whether the innocent spouse received a

significant benefit, although it remains an important factor. Hayman v. Commissioner, 992 F.2d at 1262; Estate of Krock v. Commissioner, supra at 678; sec. 1.6013-5(b), Income Tax Regs.

Normal support, as measured by the circumstances of the parties, is not considered a significant benefit for purposes of determining whether denial of innocent spouse relief would be inequitable under section 6013(e)(1)(D). Flynn v. Commissioner, 93 T.C. at 367; Purcell v. Commissioner, 86 T.C. at 242. However, a significant benefit may be found where the omitted income is used not merely to pay a few household expenses, but to maintain a married couple's "unusual lifestyle". Estate of Krock v. Commissioner, supra at 683-684. Tax savings, such as those deriving from the omission of income and the erroneous Schedule C deduction, constitute a significant benefit as well. Bokum v. Commissioner, 94 T.C. at 157.

The amount of the understatement in the instant case provided funding for unusual expenditures and asset acquisitions for the benefit of petitioner beyond whatever might have been normal support. See supra pp. 3-4. In sum, petitioner's lifestyle improved significantly as a result in part of the constructive dividend income and disallowed Schedule C expenses. Sanders v. United States, 509 F.2d at 168.

Even if the Court were to credit Mrs. Meyer's self-serving testimony that the mansion was a "monster" and that she derived no pleasure from her opulent surroundings, acquiring savings and

other assets may also constitute a significant benefit precluding the application of innocent spouse relief. Purificato v. Commissioner, 9 F.3d 290, 296 (3d Cir. 1993), affg. T.C. Memo. 1992-580; Estate of Krock v. Commissioner, supra at 679. Evidence of a significant benefit includes transfers of property, including unusual or lavish support or gifts in years after the one at issue. Estate of Krock v. Commissioner, supra at 679.

Mrs. Meyer received large sums of money from several corporations owned by her husband, both during and after the year at issue. See supra pp. 5-6. Moreover, petitioner deposited into her own account monthly rental income she received from a tenant living at the Muttontown estate. Although Mrs. Meyer claimed to drive only a Mercury stationwagon, she had five automobiles registered in her name, including a Lincoln and two Lexuses, in the years following 1989. Under these circumstances the Court determines a significant benefit inured to petitioner as a result of the understatement of tax and income. See, e.g., Levitt v. Commissioner, T.C. Memo. 1995-464; Tabbi v. Commissioner, T.C. Memo. 1995-463; Stiteler v. Commissioner, T.C. Memo. 1995-279; Pettinato v. Commissioner, T.C. Memo. 1995-85.

Another factor to consider is whether the spouse seeking relief has been deserted by, or divorced or separated from, the alleged culpable spouse. Sec. 1.6013-5(b), Income Tax Regs. However, relief is not limited to spouses whose marriages have

ended. Mysse v. Commissioner, 57 T.C. at 700. Mrs. Meyer's separation from her husband is only one factor to be considered in evaluating the issue of inequity. Id. We do not find it decisive. Mr. Meyer, although jailed, "has not disappeared and left * * * [Mrs. Meyer] to 'face the music' alone, and she has not been deserted in the sense foreseen by the legislators who enacted the innocent spouse defense." Hayman v. Commissioner, 992 F.2d at 1263. In fact, he testified on her behalf and has himself acceded to the deficiencies asserted by respondent.

Finally, whether the failure to report correctly tax liability stems from evasiveness or deceit on the part of the "guilty" spouse is also relevant. Since Mrs. Meyer has not shown that the substantial understatement of tax and income arose from any dishonesty or concealment on her husband's part, it is not inequitable to hold them both jointly liable. Hayman v. Commissioner, 992 F.2d at 1262; McCoy v. Commissioner, 57 T.C. at 735; Prince v. Commissioner, T.C. Memo. 1995-368.

For the foregoing reasons, we hold that petitioner Rosemarie Meyer is not an innocent spouse within the meaning of section 6013(e) as to the deficiency, additions, and penalties in income tax for the relevant year attributable to the grossly erroneous items of both petitioner and her husband.

Decision will be entered
for respondent.